**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Alan Arnett, | No. CV-21-00284-TUC-JCH |
| Plaintiff, | **ORDER** |
| v. | |
| Pete Buttigieg, | |
| Defendant. | |

Plaintiff challenges the FAA's denial of three of his applications for employment. Doc. 1 ¶ 34. Plaintiff alleges that the FAA's denial violated the Age Discrimination in Employment Act ("ADEA"). *Id.* ¶¶ 38, 41.

Before the Court is Defendant's Motion for Summary Judgment (Doc. 53 ("MSJ")). Defendant argues, among other things, that Plaintiff's applications were permissibly denied under a well-established ADEA exception for air traffic controllers. Defendant explains that Plaintiff applied to air traffic controller positions, Plaintiff was older than the statutory maximum age when he applied, and no exception existed at the time. Plaintiff does not directly respond to Defendant's argument, but indirectly claims that the statutory maximum did not apply. Upon review, the Court concludes the ADEA exception applied to Plaintiff's applications and his claim fails as a matter of law. The Court will grant summary judgment for Defendant.[1]

---

[1] Plaintiff's request for oral argument is denied because it would not aid the Court's decision. Fed. R. Civ. P. 78(b).

## I.  Legal Standard

Summary judgment is appropriate when the parties have no genuine dispute as to any material fact.  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A dispute is genuine if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986). A fact is material if it might affect the outcome of the suit. *Id.*

The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323. If the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material. *Liberty Lobby*, 477 U.S. at 248, 250; *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1). The court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor.  *Liberty Lobby*, 477 U.S. at 255.

## II.  Analysis

Defendant moves for summary judgment in part because the three positions Plaintiff applied for are within the statutory definition of an "air traffic controller," and so are subject to a well-established statutory exception to the ADEA. Plaintiff fails to genuinely dispute that the positions he applied to were within the ADEA exception, and fails to show that the FAA's policies were pretext for discrimination in any event.

### A. Defendant carries his initial burden by demonstrating that the ADEA does not apply to air traffic controllers.

Defendant's Motion explains why 5 U.S.C. § 8335 and § 3307 exempt air traffic controllers from the ADEA. MSJ at 1–6, 11–13. Specifically, Public Law 92-297 created a mandatory retirement age for air traffic controllers, § 8335, and amended § 3307 to permit

1  a corresponding maximum entry age for air traffic controllers. MSJ at 1–3. Acting under
2  § 3307 authority, the Secretary of Transportation established a maximum entry age of 31
3  for air traffic controllers. MSJ at 3. The Secretary also delegated authority to the FAA to
4  establish certain exceptions to the maximum entry age. *Id.* The FAA subsequently created
5  an exception for retired veterans with air traffic control experience, the Retired Military
6  Controllers Program ("RMC Program"). MSJ at 4. The RMC Program was active from the
7  year 2000 until the FAA ended it in 2015; the FAA then reversed course and reactivated
8  the RMC Program in October 2018. MSJ at 5–6. Plaintiff's three rejected applications were
9  all submitted while the RMC Program was inactive. MSJ at 7–9.

10       Defendant cites cases uniformly upholding maximum age requirements for certain
11  federal employees under § 8335 and § 3307. These cases are on point. *See, e.g.*, *Kimel v.*
12  *Fla. Bd. Of Regents*, 528 U.S. 62, 68–69 (2000) (acknowledging that § 3307 permits
13  maximum entry age limits for certain federal employees despite the ADEA); *Johnson v.*
14  *Mayor and City of Baltimore*, 472 U.S. 353, 366 n.10 (1985) (discussing § 8335—
15  "Congress, of course, may exempt federal employees from application of the ADEA[.]");
16  *Dungan v. Slater*, 252 F.3d 670, 673–74 (3d Cir. 2001) (holding that § 8335 defeated air
17  traffic controller ADEA claim); *Reed v. Reno*, 146 F.3d 392, 394 (6th Cir. 1998) (holding
18  that § 3307 creates a valid exception to the ADEA); *Patterson v. United States Postal*
19  *Service*, 901 F.2d 927, 929–30 (11th Cir. 1990) (same); *Stewart v. Smith*, 673 F.2d 485,
20  490 (D.C. Cir. 1982) (same); *Thomas v. U.S. Postal Inspection Service*, 647 F.2d 1035,
21  1037 (10th Cir. 1981) (upholding § 3307 as having a "rational, but also a sensible" basis).
22  Ninth Circuit courts appear to agree with the consensus view. *E.E.O.C. v. Los Angeles*
23  *Cnty.*, 706 F.2d 1039, 1041 (9th Cir. 1983) (acknowledging § 3307 "upheld against ADEA
24  attack" for certain federal employees but declining to extend it to state and local
25  government employees); *Yap v. Slater*, 128 F. Supp. 2d 672, 680 (D. Haw. 2000)
26  (discussing § 8335—"The ADEA is not applicable to air traffic controllers[.]").

27       The material facts are undisputed. The parties agree § 3307 permits the Secretary to
28  establish a maximum entry age for air traffic controllers, and the Secretary set the

maximum entry age at 31. Doc. 57 ("DSOF") ¶ 1, 3; Doc. 59 ("PSOF") ¶ 1, 3. The parties agree on the definition of an "air traffic controller." DSOF ¶ 1; PSOF ¶ 1. The parties agree the RMC Program created an exception to the maximum entry age of 31 for air traffic controllers. DSOF ¶¶ 3, 4, 5; PSOF ¶¶ 3, 4, 5. The parties agree Plaintiff was hired under the RMC Program's exception in 2014, the year he turned 47. *See* DSOF ¶¶ 22, 23; PSOF ¶¶ 22, 23. The parties agree Plaintiff submitted all three of his rejected applications during the RMC Program's suspension from 2015 to late 2018. *See* DSOF ¶¶ 26, 27, 44; PSOF ¶¶ 26, 27, 44. And the parties agree the RMC Program suspension was limited only by certain grandfathering provisions that did not apply to Plaintiff. DSOF ¶ 57; PSOF ¶ 57. The statutes, cases, and undisputed record Defendant cites provide an ample basis for summary judgment, so the burden shifts to Plaintiff to show a genuine issue for trial.

   **B.  Plaintiff fails to genuinely dispute that § 3307 applied to his three rejected applications and, in any event, fails to establish pretext.**

   Plaintiff's response does not mention § 3307 or engage Defendant's argument directly, but faintly implies that § 3307 did not apply to Plaintiff's applications. Plaintiff's response primarily recites a standard ADEA claim. Response at 4–6 (citing *Babb v. Wilkie*, 140 S. Ct. 1168 (2020) and a few Ninth Circuit cases). Plaintiff's citation to these sources is misplaced. *Babb* involved a federally employed pharmacist, not an air traffic controller or any other position described by § 3307. *See* 140 S. Ct. at 1171. Plaintiff's Ninth Circuit citations similarly do not discuss § 3307. *See* Response at 5–6. Nonetheless, several of Plaintiff's statements imply that § 3307 did not apply to his applications. Plaintiff is mistaken. But even setting that to the side, and granting for the sake of argument that he can demonstrate the elements of an ADEA claim, Plaintiff cannot establish that the FAA's policies were pretext for age discrimination.

   **i.  Plaintiff implies that he was not an "air traffic controller," but the positions he applied to were within the statutory definition of that term.**

   Three statements in Plaintiff's response imply that § 3307 does not apply to his rejected applications. First, Plaintiff emphasizes that he was "no longer working as an [air traffic controller ("ATC")] ... under the RMC program" when he applied to the three

1  positions denied him. Response at 10. Second, Plaintiff states that although "there is a 31

2  year old age limit for initial ATC trainee hires[,] there is no age limit for initial hire[s] for

3  the three non-ATC positions for which [Plaintiff] applied in 2017 and 2018." Response at

4  16. Third, Plaintiff states that he "is not complaining about his initial hire as an ATC …

5  [but rather] his promotional applications being rejected in 2017 and 2018." Response at 17.

6  The Court construes these statements to allege a genuine dispute about whether § 3307

7  applies to Plaintiff's rejected applications, and examines the record in more detail.

8      In 2014, Plaintiff was hired as an air traffic controller into a temporary position

9  under the RMC Program. DSOF ¶ 23; PSOF ¶ 23. The RMC Program allowed retired

10  military air traffic controllers to assume air traffic control positions after age 31. DSOF

11  ¶ 6; PSOF ¶ 6. RMC Program hires "whose initial appointments to [RMC] positions ...  are

12  made following their 31st birthdays are only eligible for time-limited appointments to those

13  positions." EMP 1.20a ¶ 2(b)–(c) (cited by DSOF ¶ 6; PSOF ¶ 6). Plaintiff was 47 years

14  old in 2014. *See* DSOF ¶ 22; PSOF ¶ 22.

15      On July 22, 2015, the FAA discontinued the RMC Program. DSOF ¶ 11; PSOF ¶ 11.

16  The FAA discontinued the RMC Program because (1) it was unnecessary given a new two-

17  tiered hiring track giving priority to veterans; (2) the Program was hardly used, accounting

18  for just 145 hires in 20 years; (3) aspects of the Program's policies on time-limited

19  appointments conflicted with other FAA policies; and (4) the Program's requirement of

20  mandatory retirement at age 56 threatened an RMC's ability to qualify for full retirement

21  benefits. DSOF ¶ 12; PSOF ¶ 12. The FAA discontinued the RMC Program by issuing

22  Policy Bulletin No. 92 (Doc. 57-5), which replaced EMP 1.20a. *See id.* Policy Bulletin No.

23  92 provided that any RMC hires on temporary assignment on July 22, 2015, were

24  "grandfathered as outlined in this policy bulletin." *Id.* § 3. Grandfathered RMCs were

25  eligible for certain promotional vacancies that non-grandfathered RMCs were not. *Id.*

26  § 4(a)–(c). Plaintiff was an RMC hire on temporary assignment on July 22, 2015, so

27  Plaintiff became a grandfathered RMC. *See* DSOF ¶ 14; PSOF ¶ 14.

28      About a month later, on August 23, 2015, Plaintiff left his grandfathered RMC

position as a temporary air traffic controller for a promotion to a Mission Support Specialist ("MSS1"), a permanent position not directly related to separation and control of air traffic. DSOF ¶ 24; PSOF ¶ 24. Policy Bulletin No. 92 specifically provides that if "an RMC employee is converted to a permanent appointment in a [position not directly related to separation and control of air traffic] (e.g., a ... Staff (MSS)-1 ... position) ... they are no longer an RMC." § 4; *see also* DSOF ¶¶ 16, 57; PSOF ¶¶ 16, 57 (agreeing that RMCs who left for permanent positions not directly related to separation and control of air traffic were then ineligible for new appointments in positions directly related to separation and control of air traffic). Thus, Plaintiff's status as a grandfathered RMC was severed when he became an MSS1 in 2015.

On May 22, 2017, Plaintiff applied to two of the positions he alleges were improperly denied to him. Plaintiff applied to a Prescott, Arizona "Mission Support Specialist 2" ("MSS2") position directly involved in the separation and control of air traffic. DSOF ¶¶ 7 (defining "covered" positions), 27 (describing the MSS2 position as "covered"); PSOF ¶¶ 7, 27. Plaintiff also applied to a Tucson, Arizona MSS2 position directly involved in the separation and control of air traffic. DSOF ¶¶ 7, 29; PSOF ¶¶ 7, 29. An "air traffic controller" is someone "actively engaged ... in the separation and control of air traffic."[2] 5 U.S.C. § 2109(1)(A)(i); *see also* DSOF ¶ 1; PSOF ¶ 1. Plaintiff was ineligible for these positions under § 3307 because they were within the statutory definition of an "air traffic controller." Plaintiff was also ineligible for these positions under Policy Bulletin No. 92 because Plaintiff's status as a grandfathered RMC was severed in 2015.

In March 2018, Plaintiff applied for the third position he alleges was improperly denied to him. Plaintiff again sought a Tucson, Arizona MSS2 position directly involved in the separation and control of air traffic. DSOF ¶¶ 7, 44; PSOF ¶¶ 7, 44. Plaintiff was ineligible for this position under § 3307 because the position was within the statutory definition of an "air traffic controller." Plaintiff was also ineligible under Policy Bulletin

[2] The term also includes an air traffic controller's "immediate supervisor," 5 U.S.C. § 2109(1)(B), and their supervisor's supervisor. 5 U.S.C. § 8331(30)(b) (modifying § 2109(1)(B)).

No. 92 because Plaintiff's status as a grandfathered RMC was severed in 2015.

### ii.  Focusing on FAA policies rather than § 3307 does not change the analysis.

Mindful of its obligation to draw all inferences in Plaintiff's favor, the Court considers a variation of Plaintiff's implied argument but still reaches the same conclusion. The Court has until now focused on whether § 3307 applied to Plaintiff's rejected applications. Reading closely, Plaintiff does not refer to § 3307 but rather complains that the FAA rejected his applications with reference to FAA policy documents—specifically ESP 1.20a (creating the RMC Program) and Policy Bulletin No. 92 (terminating the RMC Program). *See, e.g.*, Response at 10 ("the FAA deemed [Plaintiff] ineligible given the FAA's RMC rules or policies"). Plaintiff's record citations also show that the FAA employees who evaluated his applications referred to FAA policy documents, not § 3307. *See* PSOF ¶¶ 65 (citing Doc. 59-6 at 2), 67 (citing Doc. 59-6 at 3). But Plaintiff's dispute is not genuine because he also agrees that these FAA policy documents were created under authority validly delegated by § 3307(b) through the Secretary of Transportation to the Administrator of the FAA. DSOF ¶¶ 1, 3, 4, 11; PSOF ¶¶ 1, 3, 4, 11. Given full credit, Plaintiff's dispute is also internally inconsistent because Plaintiff accepts his initial hire under ESP 1.20a but objects to his rejections under Policy Bulletin No. 92. Whether the Court looks directly to § 3307 or to the FAA policy documents authorized by § 3307, the result is the same.

For these reasons, § 3307 applied through the FAA's policy documents to Plaintiff's three rejected applications in 2017 and early 2018. Plaintiff applied to air traffic controller positions, a statutory age limit applied to those positions, and Plaintiff was over that age limit. The RMC Program exception to § 3307 was not available, and Plaintiff was no longer grandfathered. Plaintiff identifies no other facts that could be dispositive. Therefore, Plaintiff has not demonstrated a genuine issue for trial.

### C.  Even if Plaintiff could bring an ADEA claim, he cannot show pretext.

Granting for the sake of argument that § 3307 and Policy Bulletin No. 92 do not apply, and that Plaintiff could establish a *prima facie* ADEA case, Plaintiff still cannot

prove that Defendant's legitimate, nondiscriminatory reasons for rejecting Plaintiff's applications were pretextual. To establish a *prima facie* case, Plaintiff must show he was "(1) at least forty years old, (2) qualified for the position for which an application was submitted, (3) denied the position, and (4) the promotion was given to a substantially younger person." *Shelley v. Geren*, 666 F.3d 599, 608 (9th Cir. 2012) (applying the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), framework in an ADEA context). There are at least some reasons to think Plaintiff could not prove elements two or four. But once a plaintiff demonstrates all elements, the burden shifts to the defendant to supply legitimate, nondiscriminatory reasons for the challenged action. *Opara v. Yellen*, 57 F.4th 709, 725 (9th Cir. 2023). A defendant carries this burden if the defendant's reasons—taken as true and not assessed for credibility—permit the conclusion that there was a nondiscriminatory reason for the challenged action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507–09 (1993). Under this standard, Defendant carries his burden by providing evidence that the FAA officials who evaluated Plaintiff's applications were unaware of Plaintiff's age and made their decisions entirely with reference to FAA policy documents EMP 1.20a and Policy Bulletin No. 92. MSJ at 18. The burden then shifts back to Plaintiff to prove that Defendant's reasons are pretextual. *See Opara*, 57 F.4th at 726.

Plaintiff's many attempts to show pretext fail. Plaintiff argues that the FAA employees involved in the RMC Program did not evaluate whether age-related restrictions were relevant for air traffic controllers. Response at 14. But the FAA has no authority to second-guess Congress, and Congress determined the age-related restrictions were relevant. *See, e.g.*, S. Rep. No. 92-774 (1973) ("[M]ost [air traffic] controllers are not able to control traffic in a busy facility at any age near 55—the physical and emotional strength required to do the job, to work odd and continuously changing work shifts, and to insure air safety for the traveling public is simply too much for any man in that age bracket.")

Plaintiff argues that the FAA's justification for a mandatory retirement age of 56 is inconsistent with the fact that some air traffic controllers are permitted to work until age 61. Response at 14. But Plaintiff also admits that 5 U.S.C. § 8335(a) permits the Secretary

of Transportation to exempt certain air traffic controllers until age 61. PSOF ¶ 2.

Plaintiff argues that he was treated differently and less favorably than other RMC hires. Response at 11 (citing PSOF ¶ 70), 14–15. But the record Plaintiff cites shows only that 11 RMC hires were promoted "since January 1, 2016." Doc. 59-4 at 2–3 (cited by PSOF ¶ 70)), a period that includes four years after the RMC Program was reactivated. Plaintiff also admits he was the only RMC applicant whose grandfathered status was severed under Policy Bulletin No. 92. PSOF ¶ 57.

Plaintiff argues that the FAA did not disclose how the RMC Program was "re-aligned" to ensure ADEA compliance when it was reactivated in 2018. Response at 15. But Plaintiff does not explain how that is relevant to a claim involving applications rejected before the program was reactivated.

Plaintiff argues the FAA has submitted changing reasons for the decision not to hire him. Response at 15 (citing PSOF ¶ 63). But the record Plaintiff cites shows that the FAA consistently asserted that Plaintiff was ineligible under Policy Bulletin No. 92. *See* Docs. 59-6, 59-8. Defendant's legal argument that eligibility is a form of qualification does not create an inconsistent reason for rejecting Plaintiff's applications.

Plaintiff argues the FAA does not have a policy on rescinding offers after they are made. Response at 15. But Plaintiff does not explain how that is relevant to a claim of pretext when Policy Bulletin No. 92 provided a clear policy precluding Plaintiff's hire.

Plaintiff argues the FAA authorized Plaintiff's immediate supervisor to make eligibility determinations. Response at 15–16 (citing Doc. 59-7). But the record Plaintiff cites shows that FAA HR officials reviewed applications for eligibility before referring them to hiring managers. Doc. 59-7 at 27–28. Plaintiff also admits that these officials did in fact determine Plaintiff was ineligible. PSOF ¶ 35.

Plaintiff argues the FAA never mentioned the RMC Program ineligibility issue in the vacancy listings despite a policy to provide all eligibility requirements there. Response at 16. But the record Plaintiff cites does not clearly show that such a policy existed, and even if it did Plaintiff does not explain why that policy would defeat the RMC Program or

§ 3307 age requirements.

Plaintiff argues there is no age limit "for initial hire" for three positions denied to Plaintiff. Response at 16 (citing PSOF ¶ 80). But the record Plaintiff cites shows only that the vacancy listings did not state an age limit. *See* Doc. 59-5. As above, Plaintiff does not explain why that means the RMC Program or § 3307 requirements do not apply.

Plaintiff argues that some RMC hires must re-apply each year while other RMC hires do not. Response at 16 (citing PSOF ¶¶ 82, 83). But Plaintiff does not explain how that is relevant to his discrimination claims or to pretext.

Finally, Plaintiff argues that Defendant does not explain the relevance of the FAA's authority to set maximum entry age limits for air traffic controllers. Response at 17. But Defendants have done precisely that by showing that § 3307 and Policy Bulletin No. 92 governed Plaintiff's rejected applications.

In short, Plaintiff's claim fails even if the ADEA applied, which it does not.

**III.   Order**

For the reasons above,

**IT IS ORDERED GRANTING** Defendant's Motion for Summary Judgment (Doc. 53). The Clerk of the Court shall enter judgment accordingly.

**IT IS FURTHER ORDERED GRANTING** Defendant's Motion to File Excess Pages (Doc. 62).

Dated this 24th day of February, 2023.

Honorable John C. Hinderaker
United States District Judge